IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS A. MODI, M.D.       )
                                  )
      Plaintiff           )
                                  )    CIVIL ACTION
v.                               )
                                  )    FILE NO. 1:09-CV-0550-CAP
PROVIDENT LIFE AND        )
ACCIDENT INSURANCE       )
COMPANY                 )
                                  )
      Defendant         )

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESSES

Now comes defendant PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY ("Provident Life"), and submits this memorandum in opposition to plaintiff's motion to exclude Provident Life's expert witnesses from testifying in this action.

## I.    Introduction

Plaintiff seeks a declaratory judgment that he is totally disabled from his occupation as an OB-GYN due to "accidental bodily injuries," which would entitle him to $15,000 per month in tax-free disability benefits for the remainder of his life.  (Plaintiff's First Amended Complaint, ¶ 5.)  Plaintiff will become 64 years of

age on March 15, 2010.  (*See id*.)  Assuming that plaintiff lives another 20 years, the ultimate stakes in this litigation exceed $3.5 million. [1]

Plaintiff claims to have sustained four accidental injuries over a period of three decades.  (Plaintiff's First Amended Complaint, ¶¶ 7-8.)   According to a Chronology of Back Issues submitted as part of plaintiff's claim for disability benefits:

(a)  He experienced "severe low back pain" in the early 1980s while "helping a motorist push his stranded vehicle," resulting in lumbar disk surgery in 1983, from which he recovered;

(b)  He had a horse riding accident in "approximately 1993," resulting in "the return of severe low back pain" and a second lumbar diskectomy, from which he also recovered;

(c)  Approximately five years later, his low back pain returned after "a particularly painful fall from a horse," resulting in a lumbar fusion in April 1998, from which he again recovered; and

(d)  Ten years later, in January 2007, "during an exercise session directed by a personal trainer" at a fitness facility, plaintiff experienced low back pain,

---

[1] Plaintiff's eligibility for lifetime benefits assumes that he remains "totally disabled," which he has strenuously attempted to prevent Provident Life from discovering.  The parties have briefed three motions relating to discovery on this central issue.

resulting in another lumbar fusion in August 2007.  (*See* Chronology of Back Issues, Exhibit C to Provident Life's second motion to compel.)

It is the January 2007 incident at the fitness facility that purportedly caused plaintiff to become totally and permanently disabled, as he had recovered from his earlier surgeries and had been working for ten years on a full-time basis.  Plaintiff cannot identify any witness to the 2007 injury, despite his contention that it occurred while he was exercising under the direct supervision of a personal trainer at a public facility.  (Plaintiff's deposition, pp. 115-120, 153-154, Exhibit B to Provident Life's second motion to compel; plaintiff's answers to Provident Life's first interrogatories, Exhibit 3 to Provident Life's first motion to compel.)  The trainer, Richard Miranda, testified that he would have remembered if plaintiff had cut short their workout due to disabling pain, and that he learned about plaintiff's allegations of pain later from one of plaintiff's subsequent personal trainers. (Miranda deposition, pp. 49-52; 56-57; 64-70, Exhibit 1.)

Plaintiff's treating neurosurgeon, Christopher R. Tomaras, M.D., was designated as an expert witness, and he has expressed the opinion that plaintiff is totally disabled due to accidental bodily injuries.  Additionally, plaintiff retained an independent expert, John G. Heller, M.D., an orthopedic surgeon, who expressed the same opinion.  (Plaintiff's Third and Fourth Supplemental Initial Disclosures, Exhibits 2 and 3.)

During Provident Life's evaluation of plaintiff's claim for disability benefits, two retired orthopedic surgeons, Joel W. Saks, M.D., and Hugh P. Brown, M.D., were asked to review his medical records. They each concluded that plaintiff's spinal condition is degenerative, and that his disability is due to sickness or disease. Drs. Saks and Brown are in-house physicians employed by Unum Group (Provident Life's parent company), and are not "independent" experts specifically retained to testify in this case. Provident Life nevertheless identified them as expert witnesses expected to testify at trial, pursuant to Fed.R.Civ.P. 26(a)(2). (Defendant's Rule 26(a)(2)(B) disclosures, Exhibits 4 and 5.) Because Drs. Saks and Brown reached their opinions pre-litigation, during Provident Life's evaluation of plaintiff's disability claim, plaintiff no doubt will argue at trial that they are not "independent" experts in an attempt to undermine their credibility.

As this litigation proceeded and after several depositions had been taken, counsel for Provident Life retained two additional experts in preparation for trial: (1) an independent orthopedic surgeon to counter the opinion of plaintiff's independent orthopedist, Dr. Heller, and (2) an expert in biomechanical engineering, to address the likelihood that plaintiff suffered a totally disabling spinal injury while using an assisted chin-up machine at the fitness facility in January 2007. They are Lee A. Kelley, M.D., an orthopedic surgeon with Peachtree Orthopedic Clinic in Atlanta, and Peter A. Cripton, Ph.D., P.Eng., a

biomechanical expert with Synaptic Analysis Consulting Group in Vancouver, British Columbia. (Defendant's Rule 26(a)(2)(B) disclosures, Exhibits 6 and 7.)

The identities and opinions of Dr. Kelley and Dr. Cripton were timely disclosed on January 27 and February 4, 2010, during the extended discovery period. Discovery has not closed, and both plaintiff and Provident Life have been actively engaged in discovery since the Court granted the parties' joint request for an extension of discovery on December 28, 2009. (Record Document no. 53.)

The extension of discovery was not "solely for the purpose of tying up two loose ends," as plaintiff contends. In fact, plaintiff's discovery conduct since then belies this allegation, and the joint motion clearly stated: "The parties may need to conduct additional discovery, either in furtherance of the foregoing discovery matters or otherwise, to prepare this case for trial." (Record Document no. 51, ¶ 7.) No limitation on discovery was either requested or implied in the joint motion, and none was imposed by the Court when it entered the consent order jointly submitted by the parties.

Nevertheless, plaintiff has filed a motion to exclude Drs. Kelley and Cripton as expert witnesses, claiming that they were identified "too late" for their depositions to be taken. Plaintiff's attorneys are aware, however, that Dr. Kelley was available for a discovery deposition on March 1, and that Dr. Cripton was available for a discovery deposition in Vancouver on March 11 or 12, or in Atlanta

on March 17, 2010.  (*See* February 18, 2010, letter to plaintiff's counsel, Exhibit 8.)  In fact, Dr. Kelley's deposition had been scheduled for March 1 *before* plaintiff's motion was filed.  However, plaintiff's attorneys now have refused to take the depositions, instead focusing their time and effort on the motion to exclude the witnesses altogether, claiming that they do not have enough time to depose them or to find a witness to counter Dr. Cripton's testimony.  According to plaintiff, Provident Life has violated Local Rule 26.2 regarding disclosure of expert witnesses.  For the reasons discussed below, plaintiff's motion to exclude Provident Life's experts should be denied.

## II.   <u>Argument and Citation of Authorities</u>

### A.   <u>Provident Life did not violate Fed. R. Civ. P. 26 or Local Rule 26.2C</u>.

On December 28, 2009, the Court entered a consent order extending discovery "until the Court rules on the pending discovery motions, and additionally for 30 days after the Court rules on the motions if the Court orders additional discovery to be allowed."  (Record Document no. 53.)  The discovery motions referenced in the consent order are (1) plaintiff's motion to quash a subpoena served by Provident Life on his former OB-GYN clinic; (2) Provident Life's first motion to compel discovery; and (3) Provident Life's second motion to compel discovery.  Briefing on these motions was completed on January 21, 2010.

Provident Life's Rule 26(a)(2)(B) disclosures of Dr. Kelley and Dr. Cripton were filed on January 27 and February 4, 2010, respectively.  (Record Documents no. 62 and 65.)  The discovery period was then open, and it remains open.  Fed. R. Civ. P. 26(a)(2)(C) requires parties to disclose expert witnesses "at least 90 days before the date set for trial or for the case to be ready for trial."  This case has not been placed on a trial calendar, and plaintiff apparently does not dispute that Provident Life has complied with Rule 26(a)(2)(C).  *See Collins v. Beazer Homes U.S.A., Inc.*, 334 F. Supp. 2d 1365, 1371 (N.D. Ga. 2004) (motion to exclude expert denied where expert was disclosed with more than forty days of discovery remaining, and where no trial date had been set).

Rather, plaintiff contends that the disclosures of Dr. Kelley and Dr. Cripton violated Local Rule 26.2C, which requires a party to designate an expert witness "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery."  Plaintiff declares that "[i]t seems certain that discovery will expire before all the actions in Rule 26.2 can be completed," and that he "cannot possibly prepare for and then depose Dr. Kelley and Dr. Cripton, and then locate, prepare identify and allow to be deposed a competing expert in biomechanics in anything

less than three to four months." (Plaintiff's motion to exclude experts, p. 19 and n.5).

Despite this claim of insufficient time, before filing the motion to exclude Provident Life's experts, plaintiff's counsel had already agreed to take the deposition of Dr. Kelley on March 1, 2010. (February 4, 2010, e-mails, Exhibit 9.) Plaintiff now has declined to take the deposition, preferring to wait for a ruling on his motion to exclude Dr. Kelley as a witness. (February 18, 2010, letter to plaintiff's counsel, Exhibit 8; February 19, 2010, letter from plaintiff's counsel, Exhibit 10.) Dr. Cripton was available for deposition on March 11, 12, or 17, 2010, but plaintiff similarly has declined to take his deposition. (*See id*.) Presumably, plaintiff likewise has taken no steps to retain a witness to rebut the opinion of Dr. Cripton, despite the fact that his expert report was filed nearly three weeks ago.

Ironically, plaintiff claims to have filed his motion in part to "avoid the . . . delay associated with conducting depositions" of the experts, yet he has made no effort to depose them in a timely manner, and has rejected the deposition dates of March 1 and mid-March. (Plaintiff's motion, pp. 2-3.) Under these circumstances, plaintiff's argument that Provident Life violated Local Rule 26.2C rings hollow. Plaintiff's contention that the experts were not timely disclosed and his simultaneous refusal to take their depositions during the discovery period smacks

of an effort simply to gain an advantage by limiting Provident Life's witnesses to Dr. Saks and Dr. Brown, the two in-house medical consultants.

On these facts, plaintiff can make no legitimate claim of prejudice, and any delay is of his own creation. *See Suboh v. Bellsouth Bus. Sys*., *Inc.,* 2004 WL 5550100, *14 (N.D. Ga. Nov. 17, 2004) (Defendant failed to establish prejudice resulting from plaintiff's failure to provide expert report earlier, where defendant did not "show[] that it made any effort to depose [the expert], nor [did it show] that it attempted to obtain its own expert witness to rebut the testimony of [plaintiff's expert].").

In *Collins v. Beazer Homes U.S.A., Inc.*, 334 F. Supp. 2d 1365 (N.D. Ga. 2004), the court denied the defendants' motion to exclude the plaintiff's expert on grounds similar to those asserted here. Three weeks before the end of discovery, the plaintiff identified an expert witness on economic damages. *Id*. at 1371. Thereafter, according to the defendants, "the parties stipulated to an extension of discovery [for 20 days] for the sole purpose of deposing [a fact witness]." *Id*. The plaintiff responded that no such agreement to limit the scope of discovery was reached, and argued that the defendants were not prejudiced by the "late" disclosure of the expert. *Id*.

The court discussed the expert disclosure requirements of Rule 26 and Local Rule 26.2C, and found that the expert disclosure was timely. With the extension of

discovery, the expert was disclosed "with over forty days of discovery remaining," and "the trial date [had] not yet been set." *Id*. The defendants "presented no evidence to demonstrate that they [were] prejudiced by Plaintiff's failure to disclose [the] expert earlier." *Id*. *See also*, *Suboh,* 2004 WL 5550100 at * 14 (N.D. Ga. Nov. 17, 2004) (notwithstanding that an expert witness is disclosed late in discovery, 45 days is "ample opportunity" to depose an expert witness or to name a rebuttal expert).

The same considerations apply here. Because Provident Life did not violate the expert witness disclosure requirements of either Fed. R. Civ. P. 26(a)(2)(C) or Rule 26.2C, plaintiff's motion to exclude Drs. Kelley and Cripton should be denied.

    **B.**    <u>**The December 28, 2009, extension of discovery was not limited in scope, as the parties' joint motion and plaintiff's continuing discovery efforts demonstrate**</u>.

Plaintiff agreed to a joint motion to extend discovery for no limited purposes. Consistent with that agreement – and contrary to his claim that the extension was solely to complete Dr. Heller's deposition and to await a ruling on the discovery motions – plaintiff has conducted additional discovery during the extended discovery period to bolster his case for trial. The parties' joint motion to extend discovery expressly stated: "***The parties may need to conduct additional discovery, either in furtherance of the foregoing discovery matters or otherwise,***

***to prepare this case for trial***." (Record Document no. 51, ¶ 7.) Plaintiff's counsel

approved the joint motion via e-mail on December 21, 2009, and even revised it

"to fix a couple of typos." (December 16-21, 2009, e-mails, Exhibit 11.)

On December 15, 2009, before the joint motion was filed and approximately

two weeks before discovery was set to expire on December 31, 2009, plaintiff

served Provident Life with his second request for production of documents, the

responses to which were due by January 19, 2009. (*See* Record Document no. 51,

¶ 6.) Technically, those responses were due after the then applicable discovery

deadline, but Provident Life did not object to the timeliness of the document

requests. Instead, Provident Life agreed to extend discovery.[2] As the joint motion

stated: "the parties have been diligently and cooperatively engaged in discovery."

(*Id*. at ¶ 8.)

In December 2009, shortly before discovery was set to expire, plaintiff

disclosed a previously unidentified treating doctor, Michael Hatrak, D.C.

Provident Life had asked plaintiff to identify all of his treating physicians in its

first interrogatories served on April 30, 2009. Provident Life did not protest that

Dr. Hatrak was untimely disclosed. On December 22, 2009, Provident Life issued

---

[2] As plaintiff notes, an extension of discovery also was necessary because
Dr. Heller cut his December 11, 2009, deposition short, and it could not be re-
convened until January 26, 2010, at 7:00 p.m., reportedly due to Dr. Heller's
schedule.

11

a subpoena *duces tecum* to Dr. Hatrak to obtain his file pertaining to plaintiff.  Dr.

Hatrak finally produced his records on February 18, 2010, with a cover letter

addressed "to whom it may concern."  (Hatrak record excerpts, Exhibit 12.) [3]

In his letter, Dr. Hatrak stated that he treated plaintiff for "severe low back

pain" on February 28, 2007, the month after plaintiff's alleged injury on the

assisted chin-up machine; that he treated plaintiff two times for this pain; and that

plaintiff discontinued treatment on March 3, 2007.  (*Id.*)  Consistent with the other

contemporaneous medical records produced in this case, Dr. Hatrak's records do

not mention the chin-up machine or any traumatic injury to plaintiff's back.

(Record excerpts, Exhibit 12.)  In fact, in a handwritten patient information form

completed on February 28, 2007, plaintiff made no response to the question, "List

any past serious accidents with dates."  (*Id.*)  Based on these records of a

chiropractor not disclosed until December 2009, Provident Life now needs to

convene Dr. Hatrak's deposition.[4]

---

[3] Dr. Hartrak's records identified two other previously undisclosed medical
care providers, Gary Mark Lourie, M.D., and Georgia Physical Therapy & Sports
Medicine Center.  Provident Life does not know whether they treated plaintiff for
his low back issues, but subpoenas for their records were served on February 24,
2010.

[4] In a second patient information form dated January 7, 2009, plaintiff
identified his occupation as "physician," and his employer as "self" and "OB/GYN
of Atlanta," although he reportedly had been disabled since 2007, and he testified
that he has not worked since then.  (Hatrak records, Exhibit 12.)  This evidence
underscores the importance of Provident Life's two pending motions to compel

After discovery had been extended, plaintiff served Provident Life with his Sixth Supplemental Initial Disclosures on January 27, 2010, identifying two new witnesses for trial, Laura Pillets Bowen of Honea Path, South Carolina, and Claudia McQuillan Roland of Wellington, Florida, and providing their addresses. (Sixth Supplemental Initial Disclosures, Exhibit 13.)  Plaintiff had named these witnesses during his deposition, referring to them as Laura Pilletts and Claudia McQueen.  (Plaintiff's deposition, p. 67.)  Asked their whereabouts, plaintiff said of Ms. Pilletts, "I believe she's in North Carolina somewhere," and of Ms. McQueen [McQuillian], "I believe she's in Florida at this time."  (*Id*.)

Also after discovery had been extended, plaintiff's counsel sent an e-mail to counsel for Provident Life on January 27, 2010, asking for all documents that had been furnished to Dr. Kelley in connection with his retention as an expert. (January 27, 2010, e-mail, Exhibit 14.)  In the e-mail, counsel stated that "we will need to move quickly to schedule Dr. Kelley's deposition and to exchange the relevant information allowing us to prepare for it."  (*Id*.)  The requested documents were sent to plaintiff's counsel on the same day they were requested.

---

discovery and its opposition to plaintiff's motion to quash Provident Life's subpoena to Obstetrics & Gynecology of Atlanta, P.C.  Whether plaintiff remains totally disabled is an important issue, notwithstanding plaintiff' suggestion that this is a "single issue case."  (Plaintiff's motion to exclude experts, p. 3.)

Also after discovery had been extended, plaintiff issued a subpoena to Dr. Kelley on February 3, 2010, demanding production of a variety of documents. (Plaintiff's subpoena to Dr. Kelley, Exhibit 15.)  Dr. Kelley's attorney served a response to the subpoena on February 16, 2010, and documents responsive to the subpoena were produced to plaintiff's counsel on February 17, 2010.  (Response to subpoena, Exhibit 16, and February 17, 2010, letter, Exhibit 17.)  On February 4, 2010, the parties agreed that the deposition of Dr. Kelley would be taken on March 1, 2010.  (February 4, 2010, e-mails, Exhibit 9.)  Plaintiff later elected not to take the deposition.

Also after discovery had been extended, plaintiff's counsel sent a letter to counsel for Provident Life on February 12, 2010, regarding defendant's objections to certain of plaintiff's second document requests.  (February 12, 2010, letter, Exhibit 18.)  Some of the requested documents are confidential and proprietary, and Provident Life agreed to produce them subject to a Stipulation and Protective Order agreed to by the parties and submitted to the Court on February 18, 2010. (Record Document no. 70.)  With regard to certain other documents to which Provident Life objected, plaintiff apparently intends to file a motion to compel discovery.  As it implies, the purpose of the February 12, 2010, letter was to satisfy the requirement of Rule 37 that counsel confer in good faith before filing a motion to compel.  Fed. R. Civ. P. 37(a)(1).

Notwithstanding plaintiff's disclosure of a new doctor and the full names and addresses of two witnesses, and his own conduct of discovery in late December and into 2010, plaintiff now contends that he agreed to extend discovery "solely for the purpose of tying up two loose ends – the conclusion of . . . [Dr. Heller's deposition], and resolution of Defendant's now pending Motions to Compel." (Plaintiff's motion, p. 2.)[5]  Plaintiff repeatedly states that if he had known Provident Life would identify Dr. Kelley and Dr. Cripton, he never would have agreed to extend discovery.

Plaintiff undoubtedly would prefer that Provident Life's expert evidence be limited to the testimony of Drs. Saks and Brown, who plaintiff will contend are "biased" in-house doctors.  (*See* February 12, 2010, letter, Exhibit 18.)  However, plaintiff's assertion about the "sole" purpose of extending discovery cannot be reconciled either with the agreed-upon language of the joint motion (which expressly refutes the alleged limitation), or with the discovery plaintiff has conducted since discovery was extended.  Plaintiff has taken full advantage of the extended discovery period to bolster his case for trial, but he would have the Court exclude Provident Life's experts from testifying because they were disclosed

---

[5] Plaintiff neglects to mention that when discovery was extended, plaintiff's motion to quash Provident Life's subpoena *duces tecum* also was pending, and plaintiff had served Provident Life with his second request for production of documents.

during the same extended discovery period.  Such a request is unjust, and it should be denied.[6]

### C.   Even if Provident Life's expert disclosures had been untimely, the "late" disclosure was justified and harmless.

When a party violates Rule 26 or Local Rule 26.2C – usually by disclosing an expert witness *after* discovery has expired – the witness nevertheless may be allowed to testify if the failure to comply was "justified" or "harmless."  *See* Fed. R. Civ. P. 37 (C)(1), L.R. 26.2C (N.D. Ga.).  It bears emphasis that "[s]triking witnesses or evidence in response to a discovery violation is a drastic remedy that should be considered after other alternatives are exhausted or unavailable, and clearly only when the moving party has suffered irreparable harm or undue prejudice." *Lamothe v. Bal Harbour 101 Condominium Assoc., Inc.,* 2007 WL 781909, *1 (S.D. Fla. March 13, 2007).  *See also*, *Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988) (district court reversed for "drastic" sanction of

---

[6] Plaintiff makes much of an e-mail exchange which purportedly reflects an understanding between counsel about the purpose of extending discovery. Provident Life denies that such an understanding existed, and the e-mails do not show otherwise.  Whatever plaintiff's counsel thought about extending discovery before the joint motion was agreed upon and filed with the Court – and before plaintiff conducted additional discovery as allowed by the joint motion – is simply irrelevant. *See Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988) ("Whatever [the understanding of counsel], . . . no such limitation [on identifying new expert witnesses during an extended discovery period] appears in any order entered by the court.").

striking expert witness disclosed for the first time during a thirty-day extended discovery period).

Provident Life has not violated either the Federal or Local Rules, and therefore, it need not justify a "violation" or show that it was harmless.  Plaintiff has suggested, however, that the timing of the disclosures of Drs. Kelley and Cripton was in bad faith, or was otherwise intended to put plaintiff to a disadvantage.  That is not the case.

As the letter from his attorney dated February 12, 2010 implies, plaintiff intends to argue that Drs. Saks and Brown are biased, and that their opinions are not credible.  (*See* Exhibit 18.)  After Dr. Brown was deposed on November 12, 2009, counsel for Provident Life made the decision to seek Dr. Kelley's independent expert opinion regarding the cause of plaintiff's disability.  Dr. Kelley's office was first contacted by telephone on or about December 2, 2009.  Dr. Kelley completed his review of plaintiff's medical records and other material, and faxed a report to counsel for Provident Life on December 18, 2009.  (Report attached to Rule 26(a)(2)(B) disclosure of Dr. Kelley, Exhibit 6.)

As plaintiff points out, Dr. Kelley's Rule 26(a)(2)(B) disclosure was filed the next month, on January 27, 2010.  Plaintiff vaguely ascribes this to nefarious scheming, but the fact is that Dr. Kelley was not willing to be identified as a testifying expert unless Provident Life agreed to pay any attorney's fees he might

incur if he retained counsel to respond to a subpoena from plaintiff. Provident Life and Dr. Kelley reached an agreement on this request on January 26, 2007. (Kelley December 18, 2009, letter, Exhibit 19; January 26, 2010, e-mail, Exhibit 20.)[7] Dr. Kelley was disclosed as an expert witness the next day.

Plaintiff repeatedly mentions that Dr. Kelley is the "third" expert orthopedist Provident Life has identified, suggesting that he is extraneous or merely duplicative, and that his opinion is unimportant. This is misleading at best. Dr. Saks and Dr. Brown arrived at their opinions *pre-litigation*, during the evaluation of plaintiff's disability claim by Provident Life. They were not retained by Provident Life specifically to testify in this action. Dr. Kelley is the only "independent" orthopedist Provident Life has retained, and his testimony is a critical counterbalance to that of Dr. Heller. *See Brooks*, 837 F.2d at 962 ("No principles of good sense or fairness require a [party] to limit his expert testimony to one witness," especially when the opposing party may argue that the expert's "testimony is entitled to little weight.").

After plaintiff was deposed on November 19, 2009, counsel for Provident Life immediately took steps to locate a biomechanical engineer who could address plaintiff's claim that using the assisted chin-up machine in January 2007 caused a

---

[7] The Christmas and New Year holidays, along with Dr. Kelley's preparations to travel to Haiti to treat earthquake victims, contributed to the delay between production of the expert report and final agreement on the terms of Dr. Kelley's retention as an expert witness.

disabling injury to his spine.  Before plaintiff's deposition was taken (which

plaintiff characterizes as the "key" deposition), it was not clear precisely what type

of exercise plaintiff was doing when he allegedly became disabled.[8]

Dr. Cripton was contacted promptly by telephone, on or about November 20,

2009.  Discussions followed regarding the terms of Dr. Cripton's retention, the

scope of his analysis, the budget for the analysis, and other details, which were

agreed to and finalized on January 7, 2010.  (Retention letter signed by Provident

Life's counsel on January 7, 2010, Exhibit 21.)  Dr. Cripton then located and tested

an exemplar assisted chin-up machine like the one used by plaintiff, using a

surrogate male of similar stature to plaintiff.  He also performed various

biomechanical analyses, reviewed medical records, and reviewed radiological

films of plaintiff' spine.  Dr. Cripton produced his expert report on February 3,

2010, and he was disclosed as an expert witness the next day.  (*See* Exhibit 7.)[9]

The timing of the disclosures of Drs. Kelley and Cripton was due to (1) the

dates on which counsel for Provident Life determined that their testimony was

---

[8]  It was during this "key" deposition that plaintiff's counsel repeatedly instructed Plaintiff not to answer questions directly relevant to whether plaintiff remains "totally disabled."  This improper obstruction prompted Provident Life's first motion to compel, which if granted, will permit Provident Life to re-convene plaintiff's deposition, and could lead to additional third-party discovery.

[9]  As with Dr. Kelley, the intervening Christmas and New Year holidays contributed to the delay in reaching agreement on the terms of Dr. Cripton's retention as an expert witness.

necessary to prepare the case for trial, and (2) practical and financial issues attendant to their retention.  Provident Life was not dilatory and was not seeking to gain any unfair advantage.

Plaintiff, moreover, has not been prejudiced by the timing of the disclosures. The discovery period remains open.  Dr. Kelley was available for deposition on March 1, and Dr. Cripton was available for deposition on March 11, 12, or 17, 2010.  Plaintiff mentions that Dr. Cripton's deposition would need to be conducted in Vancouver, British Columbia, but Dr. Cripton agreed to be deposed in Atlanta on March 17, 2010.  (February 18, 2010, letter to plaintiff's counsel, Exhibit 8.)[10] Notwithstanding the availability of these witnesses for depositions, plaintiff has refused to depose them.  Because plaintiff cannot "show[] that [he] made any effort to depose [Drs. Kelley or Cripton], nor [show] that [he] attempted to obtain its own expert witness to rebut the testimony of [Dr. Cripton]," plaintiff cannot establish that he was prejudiced.  *Suboh*, 2004 WL 5550100 at *14.

Even if Provident Life had committed a technical violation of the timing requirements of Local Rule 26.2C, it could easily be rendered harmless by providing plaintiff with "an opportunity to depose [Provident Life's] experts and to

---

[10]   Dr. Cripton's availability for a deposition after mid-March is uncertain, because he will be on sabbatical in Switzerland.  He offered to change his travel arrangements to include a stopover in Atlanta for his deposition, en route from Vancouver to Switzerland.  (February 22, 2010, e-mail to plaintiff's counsel, Exhibit 22.)

retain its own rebuttal experts, if necessary, prior to the trial of this case or to the filing of any summary judgment motions." *Ricker v. Southwind Trucking, Inc*., 2006 WL 5157692, * 3 (N.D. Ga. July 13, 2006) (district court declined to strike two expert witnesses disclosed over a month *after* discovery closed, notwithstanding violation of Local Rule 26.2C).

Plaintiff cites *OFS Fitel, LLC v. Epstein, Becker and Green*, 549 F.3d 1344 (11th Cir. 2008).  As plaintiff admits, *Fitel* is distinguishable, but even so, it provides more support for Provident Life's position than for plaintiff's.  In *Fitel*, the plaintiff failed to provide an expert report until after discovery closed, which under *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008), constituted a technical violation of the discovery rules, notwithstanding that the expert had been identified before discovery closed.  When the report was filed, no date had been set for the trial or for the case to be ready for trial.

The district court struck the expert, finding that the plaintiff "had engaged in 'willful' delay in producing [the expert's] written expert report, which the court characterized as 'stonewalling.'"  *Id*. at 1363.  The Eleventh Circuit reversed, holding that the district court "abused its discretion," because the plaintiff had good faith justifications for the untimely disclosure.  *Id*. at 1365.  Among these were a good faith attempt to accommodate the opposing party's scheduling of depositions, and a good faith belief that disclosure of the report should follow

completion of all relevant fact discovery.  *Id*.  The court emphasized that the undisputed facts showed no "willful delay or stonewalling," which was the district court's express basis for excluding the expert.  *Id*. at 1365.

Both *Fitel* and *Reese* are distinguishable insofar as they involved the filing of expert reports after discovery had closed, in violation of the Rules.  There has been no such violation here.  But *Fitel* confirms that even in cases where expert disclosures are not made until after discovery closes, the expert should not be excluded where a good faith justification exists.

### D.    Drs. Kelley and Cripton are critically important to Provident Life's case.

Among the factors courts consider in determining whether the extreme sanction of striking experts is warranted are:  "(1) the importance of the testimony, (2) the reasons for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness is allowed to testify."  *LaMothe*, 2007 WL 781909 at *1 (citing *Bearint v. Dorell Juvenile Group, Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004)).  Provident Life has provided good faith reasons for not disclosing Drs. Kelley and Cripton earlier, and has shown that plaintiff has not been prejudiced by the timing of their disclosures.

These witnesses are critically important to Provident Life's defense of the case, in which plaintiff seeks to recover lifetime benefits potentially in excess of $3.5 million.  Dr. Kelley is Provident Life's only "independent" orthopedic expert,

retained after litigation was commenced to counterbalance Dr. Heller's opinions

regarding whether Plaintiff's back problems are due to accidental bodily injuries or

to sickness or disease. Because plaintiff will attempt to undermine the credibility

of Drs. Saks and Brown as "in-house" physicians, Dr. Kelley is an important

witness at trial.

Dr. Cripton will present crucial testimony regarding plaintiff's alleged

disabling "accident" at the fitness facility in January 2007. Dr. Cripton's opinions

go directly to the likelihood, from an expert biomechanical perspective, that

plaintiff suffered a disabling injury to his lower spine while utilizing an assisted

chin-up machine. Plaintiff's claim that his use of this machine, as directed by a

personal trainer, caused him to become totally and permanently disabled makes Dr.

Cripton's expert testimony critically important. Without it, Provident Life is

relegated to the opinions of physicians, who lack biomechanical expertise, to

contradict plaintiff's claim of injury. *See Brooks*, 837 F.2d at 961 (striking of

expert witness was "drastic" reversible error where "it went to the ability of the

plaintiff to make out a *prima facie* case . . . .").

## IV.   <u>Conclusion</u>

For the foregoing reasons and based on the above-cited authorities,

defendant PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

prays that plaintiff's motion to exclude defendant's experts be denied.

This 24th day of February, 2010.

s/ *H. Sanders Carter, Jr.*
H. Sanders Carter, Jr.
Georgia Bar No. 114100

s/ *Aaron E. Pohlmann*
Aaron E. Pohlmann
Georgia Bar No. 582685

Attorneys for Defendant

SMITH MOORE LEATHERWOOD LLP
2300 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, Georgia 30309
(404) 962-1015 - *Telephone*
(404) 962-1220 - *Facsimile*
*sanders.carter@smithmoorelaw.com*
*aaron.pohlmann@smithmoorelaw.com*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing pleading was prepared in Times New Roman, 14 point, and was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

Jeffrey D. Diamond, Esq.
5805 De Claire Court, N.W.
Sandy Springs, Georgia 30328

Jeffrey S. Warncke Esq.
Dietrick, Evans, Scholz & Williams, LLC
3490 Piedmont Road, N.E., Suite 1200
Atlanta, Georgia 30305

This 24th day of February, 2010.

s/ *H. Sanders Carter, Jr.*
H. Sanders Carter, Jr.
Georgia Bar No. 114100