IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS A. MODI, M.D. | ) |
| | ) |
|    Plaintiff | ) |
| | )CIVIL ACTION |
| v. | ) |
| | )FILE NO. 1:09-CV-0550-CAP |
| PROVIDENT LIFE AND | ) |
| ACCIDENT INSURANCE COMPANY | ) |
| | ) |
| | ) |
|    Defendant | ) |

## Plaintiff's Reply in Support of Motion to Exclude Defendant's Late Disclosed Experts

On February 9, 2010, Plaintiff, Thomas A, Modi, M.D (Dr. Modi) filed a Motion under Local Rule 26.2 and Fed. R. Civ. Pro. 37 to exclude both of Defendant's late disclosed experts, Dr. Lee Kelley and Dr. Peter Cripton. The motion was based primarily upon the following facts: (1) in late December, 2009, discovery was winding down, and the parties had agreed to a third extension for limited purposes, as proven by the chain of written communications; (2) Provident did not disclose to the Court or to Dr. Modi that it intended to use the third discovery extension to identify new experts; (3) the Court's Order granting the third extension reflected that it was intended for limited purposes; (4) under the governing discovery order,

discovery would close immediately if the Court denied Provident's pending Motions to Compel; and (5) if discovery closed soon, Dr. Modi would be placed in the position of either foregoing critical discovery, or agreeing under duress to yet another months-long delay in the case.

At 3:45 p.m. on February 24, 2010, Provident filed its Response in Opposition to Dr. Modi's instant Motion, arguing, among other things, that its expert disclosures were not late. Just eighteen minutes later, Provident's hollow argument was objectively and utterly refuted. At 4:03 p.m. on February 24, 2010, the Court entered an Order (Doc. 72) denying both of Defendants' Motions to Compel and granting Dr. Modi's Motion for Protective Order,[1] the effect of which was to *close discovery immediately*. This, of course, was precisely what the parties discussed and expected in the event that the Court ruled as it did.[2,3]

---

[1] The main thrust of the Order was to clarify a fundamental dispute between the parties as to the scope of this action. Dr. Modi filed a declaratory judgment intended to be limited to a one issue case to determine the medical/legal cause of Dr. Modi's (uncontested) disability. Provident sought to expand the controversy to include his current disability. The Court ruled that Provident's discovery was "not relevant to any party's claim or defense," thereby confirming the limited scope of this action. (Doc. 72)

[2] The third discovery extension was always intended to be limited in scope and duration. By e-mail dated December 16, 2009, Dr. Modi's counsel made clear his expectation that the sole purposes of the third extension of discovery would be to tie up the loose ends - namely, completing the deposition of Dr. Heller and allowing Provident to conduct additional discovery on the topics covered by its Motions to Compel, **if**

The closure of discovery on February 24, 2010, lays to rest once and for all whether Provident's recent disclosure of Dr. Kelley and Dr. Cripton

---

ordered by this Court. Dr. Modi's counsel wrote: "Let's agree to [an extension of] 30 days past the court's ruling if the judge orders any additional discovery in response to our motions. *If he does not, **then there will be nothing left to do**, and discovery should expire as of the date of the court's order. In other words, if the court does not compel any additional discovery, then the additional 30 days would simply reflect an unnecessary delay in the resolution of the case.* (Doc. 67, Exh. 2, emphasis supplied).

Not only did Provident do nothing to dispel Dr. Modi's understanding that there was "nothing left to do" in discovery besides the two specifically identified actions, to the contrary, Provident's response *confirmed* Dr. Modi's understanding. On December 21, 2009, Provident responded offering a proposed joint motion which it represented as being "*consistent with the proposal in your email [of December 16, 2009]*." (Exhibit 3). Provident also did not advise the Court or Dr. Modi that it anticipated identifying new experts when it sought the third extension. (Doc. 51). The Court extended discovery *only until it ruled on the pending discovery motions* (Doc. 53), which it has now done. Discovery is now closed.

[3] Provident also argues Dr. Modi's *reaction* to its late expert disclosures is inconsistent with its intended limited scope. Provident argues that Dr. Modi used the third extension to ask Provident for the documents it furnished to Dr. Kelley (Dft. Memo. In Opp. To Pl. Mtn. To Excl., Doc. 72, at p. 13), to seek the same documents directly from Dr. Kelley (*Id*, at p. 14), and to ask for dates for Dr. Kelley's deposition. Dr. Modi's *reaction* to Provident's surprise late disclosures has no bearing on the parties' understanding, reached a month earlier, that discovery should be winding down except for a couple of specific, ongoing issues. Moreover, Provident is wrong to blame Dr. Modi for acting quickly to protect himself upon being confronted with Provident's late expert disclosures.

violated Local Rule 26.2.[4]  Provident can no longer assert in good faith that its disclosures were timely.  The first date on which Provident could make Dr. Kelley available for deposition was March 1, 2010.  (See Feb. 4, 2010 e-mail, Exh. 1, p. 1).  Likewise, the first date on which Provident offered Dr. Cripton for deposition was March 11, 2010. (Feb. 18, 2010 letter,, Exh. 1, p. 2).  Both dates are, as Dr. Modi believed at the time he filed his instant motion, <u>outside the closure of discovery</u>.  It is therefore beyond dispute that Provident has violated LR 26.2's deadline for expert disclosure.  *See, OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1360-361 (11th Cir. 2008);  *Reese v. Herbert*, 527 F.3d 1253, 1264-265 (11th Cir. 2008).

Where, as here, a party violates the expert disclosure deadline, it "*shall not be permitted* to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified."   LR 26.2(c).   Thus, the sole questions to be determined under this Motion are whether Provident's late disclosures were

---

[4]  As noted in Dr. Modi's principal brief, The Local Rule states:

> **Expert Witnesses**. Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

"justified" or "harmless."  In fact, they are neither.  Rule 26.2 should be enforced as written, and Provident should not be permitted to offer the testimony of its late disclosed experts.

Provident offers no legally cognizable "justification" for disclosing Dr. Kelley and Dr. Cripton more than a year after the Complaint was filed. Provident's opposition to the motion admits that most of the delay in its retention of experts was, in fact, due to ten months of neglect.  By its own admission, Provident did not *begin* attempting to locate a non-employee orthopedist until November 12, 2010.  (Dft. Memo. in Opp. To Pl. Mtn. To Excl., Doc. 72, at p. 17).  Likewise, as to Dr. Cripton, Provident's response to the instant motion confirms that it did not *begin* attempting to contact him until November 20, 2009. *Id,* at 19. Provident makes no attempt to justify its ten month delay in starting the process of locating these experts.

Provident mistakenly attempts to justify its late identification of its third, "independent" orthopedist by pointing out that Dr. Modi might argue that its previous two experts are employees of Provident who may be biased. Provident, as one of the largest writers of disability insurance in the country, is a seasoned, well capitalized litigant, and is represented by very experienced and capable counsel.  A bias argument should hardly be considered novel or unexpected to Provident or its lawyers.  Provident has

known *since the inception of the case* that its two orthopedic surgeon experts are also its employees. Moreover, Provident has known **since July 21**, 2009 of Dr. Modi's intention to offer his own "independent" expert, Dr. Heller. (Pl. 3rd Supp. Disclosure, Doc. 25). If Provident felt it need to counterbalance Dr. Heller's independence with its own outside expert, it could have, and should have, done exactly what Dr. Modi actually did - begin the process early and disclose its experts on a timely basis.

Ultimately, Provident's non-compliance with Rule 26.2 has everything to do with Provident wasting the first ten months of the case neglecting to even *contact* potential outside experts, and very little to do with anything that transpired during the last few months. Provident's late disclosures are not "substantially justified" under even the most liberal interpretation.

Likewise, Provident's late disclosure is not "harmless." Motions for Summary Judgment or a Consolidated Pretrial Order <u>are now due no later than March 26, 2010.</u> Fed. R. Civ. Pro. 56((c)(1)(A); Local Rule 56(D). As to dispositve motions, if Provident were to rely on its newly disclosed experts' opinions, Dr. Modi could not adequately respond without, at minimum, cross examining the experts on deposition. He would probably need to locate, prepare, and obtain a report from an opposing expert. The

same dilemma faces Dr. Modi with respect to the Consolidated Pretrial Order due on March 26, which would require Dr. Modi to certify that discovery has concluded and require him to list his expert witnesses testimony. If Dr. Cripton is allowed to testify, Dr. Modi's portion of the pre-trial order would necessarily have to include an as-yet-unknown opposing biomechanics expert. LR 16.4.

Thus, as Dr. Modi pointed out in his principal brief, Provident's late disclosure of experts places him in the position of either preparing and/or responding to dispositive motions (or preparing a pretrial order) waiving certain actions which are absolutely necessary in order to protect his interests, or agreeing under duress to a delay of several months in the case. This simply shifts the consequences of Provident's neglect and Rule violations onto Dr. Modi. It makes far more sense for Provident to bear the consequences of its conduct by having the witnesses excluded.

Provident argues that any harm from its late disclosures may be mitigated by allowing Dr. Modi to depose its belatedly identified experts and to find his own experts. (Doc. 72, at pp. 20-21). In other words, Provident suggests that the Court should simply disregard that Local Rule 26.2 requires that these be completed *before* the close of discovery, because, to Provident's way of thinking, Dr. Modi should simply agree under duress to

do them *after* the close of discovery.  If this truly were a cure for any harm, then there would be no point in having disclosure deadlines in the first place. Any party could identify its experts at any time, and the cure would be to halt the progress of the case while the opposing party reacts to the late disclosure by taking depositions and locating responsive experts.  *In reality, Provident offers to take no responsibility whatsoever for its surprise late disclosures, and simply seeks to shift the consequences onto Dr. Modi.*[5]

---

[5] Despite the limited nature of the relevant inquiry here, Provident attempts to distract the Court with a great deal of focus on Dr. Modi's reaction to the difficult position in which Provident's late disclosures place him.  For instance, Provident's Response variously points out that Dr. Modi initially agreed to depose Dr. Kelley (Doc. 72, at p. 8); that he later changed his mind; that he could have deposed these doctors but has not, that he has taken no steps to find his own biomechanics expert; that he requested the records Provident provided to its experts; that he requested the records from the experts themselves.  None of these facts has any relevance to whether Provident's late expert disclosure is justified or harmless.  This merely reflect Provident's effort shift the Court's focus away from Provident's own Rule violations.

It is absurd for Provident to chastise Dr. Modi for not deposing Dr. Kelley and Dr. Cripton and for not immediately hiring his own biomechanics expert, even though the involvement of Provident's experts is being challenged for very good reason.  Provident seems to have lost sight of the fact that the policyholders with whom it litigates are individuals experiencing the very thing Provident uses to sell policies - the financial hardship which inevitably follows an extended disability.  Disabled policyholders are unlikely to have anything approaching Provident's resources to pay expert fees (and, in this case, the international travel expenses associated with Provident's choice of experts) nor the ability to retain their own expensive experts ***"just in case"*** Provident is excused for its clear-cut Rule violations. It makes far more sense for Dr. Modi to seek a

The Court, in evaluating the harm of Provident's late disclosures, should also take note that Provident has also placed Dr. Modi in a "double bind" with respect to Dr. Cripton because of the very burdensome circumstances under which Provident offers his deposition. Dr. Cripton is only available to be deposed on three days, all of which will pass before this Motion is likely to be resolved.[6] Two of the dates require Dr. Modi to pay his counsel to travel internationally to Vancouver, British Columbia. The third option Provident offers is for Dr. Modi to pay Dr. Cripton's international travel expenses so he may be deposed in Atlanta on March 17, 2010. (See Exh. 1, at p. 2). Moreover, after that date, Dr. Cripton is apparently going to be unavailable for deposition <u>or trial</u> in the United States for many months, maybe up to a year. On March 17, 2010, Dr. Cripton will be on his way to Switzerland, where he will be taking an extended professional "sabbatical." (Exh. 1, at p. 3). Traditionally, a "sabbatical" implies an extended leave of absence from work, usually spanning several

---

ruling from the Court and then take the appropriate action in response.

[6] This is important because it means Dr. Modi would be forced to commit to the expense of this deposition, *including international travel expenses*, knowing that, if this Motion is granted, that money and attorney time will have been wasted.

months, and up to a year.[7] Provident's late disclosures have not been "harmless," and Provident's subsequent conditions on making Dr. Cripton "available" for deposition and trial only make the situation worse.

Provident mistakenly relies on *Ricker v. Southwind Trucking, Inc*, 2006 WL 5157692 (N.D.Ga, July 13, 2006) in suggesting that the harm of is belated expert disclosures may be cured by simply doing *after* the close of discovery what Rule 26.2 requires to be done *before* the close of discovery. *Ricker* was a personal injury lawsuit brought by a family in which the eldest son was killed and the father seriously injured. The defendant trucking company challenged the plaintiff's identification of two experts on the last day of discovery. Plaintiff's counsel defended his actions as "substantially justified" because he had hoped in vain that the case might settle without the need of incurring "expense that must be deducted from the net recovery of a devastated family."

Unlike *Ricker,* in the instant case there have been no settlement discussions. Thus, unlike the plaintiff in *Ricker,* Provident did not have the

---

[7] It is reasonable to be concerned that Dr. Cripton's sabbatical might ultimately delay the <u>trial</u> of the case, or simply render him unavailable for trial. If the latter occurs, then the time and money spent deposing him would be wasted. On February 23, 2010, Dr. Modi asked Provident to clarify the length of Dr. Cripton's sabbatical. (Exh. 1, at p. 4). Provident elected not to respond. (Exh. 1, at p. 5).

same reasons for wishing to defer retaining its experts. Provident simply neglected to do so. Moreover, a multi-billion dollar insurance company's sensitivity to incurring expert witness fees is, at minimum, less compelling than that of the shattered Ricker family.

Additionally, unlike the trucking company seeking to exclude the plaintiff's experts in *Ricker,* Dr. Modi very much wants and needs this case to move toward trial without additional delay. In *Ricker,* the party seeking to exclude the plaintiff's expert was a trucking company facing a potential judgment based upon a catastrophic injury and death claim. Thus, it is understandable that the Court in *Ricker* felt that Southwind was not substantially prejudiced by a few months' delay in trial of the case to allow deposition of the Rickers' experts. Here, by contrast, the case has already been pending over one year. Every month that elapses in litigation places Dr. Modi one month closer to the Provident's unilaterally-imposed deadline for terminating his disability benefits. The whole purpose of bringing the instant declaratory judgment action while his claim is being paid, rather than after benefits terminate, is to avoid the interruption in the consistent, lifetime flow of benefits for which he bargained. Thus, what was "justified" and "harmless" conduct under the facts in *Ricker* are precisely the opposite under the very different facts of this case.

Another of the cases cited by Provident in its opposition to this motion, *Lamothe v. Bal Harbour 101 Condo. Assn., Inc.*, 2007 WL 781909 (S.D.Fla., March 13, 2007) tends to confirm that Provident's late disclosed experts *should* be excluded. It should be noted at the outset, however, that *Lamothe* involved fact witnesses, as opposed to experts. Local Rule 26.2 does not apply to fact witnesses, and the Eleventh Circuit appears to use a different methodology to analyze the excusal of late disclosures of fact witnesses, as opposed to experts. However, even mixing in the fact witness analysis, the facts here do not excuse Provident's violation of LR 26.2 As Provident points out, the factors to be considered where fact witnesses are disclosed late, according to the *Lamothe* court, are (1) the importance of the testimony, (2) the reasons for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness is allowed to testify." *Id, citing, Cooley v. Great Southern Wood Preserving*, 2006 WL 1163608, 10 (11th Cir., May 18, 2005); *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir.2004).

As to the first factor, Provident overstates the importance of Dr. Kelley's and Dr. Cripton's testimony. Because neither of them are fact witnesses, they are completely **un**necessary to telling the underlying factual story to the Court. As to Dr. Kelley, Provident already has two orthopedic

experts opining on the central issue of medical causation.  Dr. Kelley is therefore far from necessary to the Court's understanding of the medical issues.  Contrary to Provident's argument. Dr. Kelley's asserted "independence" does not make him especially "important" to the Court's understanding of the medical issues  While it may be true that Provident's other two expert witnesses are exposed to an argument of bias, ultimately such an argument may be overcome by a logical, informed, and well reasoned substantive expert opinion.[8]

Likewise, Dr. Cripton's "biomechanical" point of view is hardly necessary to the adjudication of the case.  Even in Dr. Cripton's absence, both parties will present two expert medical opinions on the issue of the medical cause of Dr. Modi's disability.  None of the four medical experts already identified in the case were prevented from forming opinions because of their inability to, like Dr. Cripton, reduce the circumstances of one of Dr. Modi's injuries to a physics formula.  The Policy does not require Dr. Modi

---

[8] Provident accuses Dr. Modi of "misleading" the Court by suggesting that Dr. Kelley's testimony may be cumulative or duplicative. (Doc. 72, at p. 18).  *Facts* are rarely "misleading."  The fact is that Dr. Kelley, like the two prior experts Provident identified, Drs. Brown and Saks, is an orthopedic surgeon.  The fact is that all three of them intend to opine on the issue of medical causation from essentially the same professional point of view.  It is hardly "misleading at best," as Provident characterizes it. for Dr. Modi to bring these facts to the Court's attention.

to prove that his story is consistent with the nascent field of "biomechanics." Thus, Dr. Cripton is not vital to the Court's understanding of the case at all.

With four other medical experts, two from each side, explaining the medical issues, the Court will not lack for evidence from which to evaluate the case if Drs. Kelley and Cripton are excluded. Thus, the first *Lamothe* factor, importance of the witness testimony, does not compel the Court to condone or excuse Provident's violations of Local Rule 26.2

As for the second factor discussed in *Lamothe*, Provident's reasons for failing to disclose Dr. Kelley and Dr. Cripton on a timely basis really come down to ten months of neglect, as discussed in detail above. This factor strongly favors exclusion of the experts.

The third and final factor under *Lamothe* is "the prejudice to the opposing party if the witness is allowed to testify." That factor has also been discussed above, and comes down to whether Dr. Modi should be forced to respond to dispositive motions or prepare a pretrial order without discovery, versus agreeing to a months long delay in the case, under duress and as a result of Provident's neglect. Provident, not Dr. Modi, should bear the consequences of its conduct.[9]

---

[9] It is worth noting that the *Lamothe* court excused the late <u>formal</u> disclosure of one witness and allowed her to testify, but excluded the other late-disclosed witness. The Court allowed one late disclosed witness to

The three *Lamothe* factors as applied here suggest that Provident's violation of Rule 26.2 should not be excused. A party which violates the expert disclosure deadline"*shall not be permitted* to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified." Local Rule 26.2(c). As the Eleventh Circuit noted in *Reese v. Herbert*, 527 F.3d 1253, 1264-265 (11th Cir. 2008),"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational."

Plaintiff respectfully submits that Defendant's violations of the disclosure rules more than justify an order precluding Dr. Kelley and Dr. Cripton from testifying, allowing the case to proceed immediately to dispositive motions or trial.

---

testify largely because even before the witness was <u>formally</u> identified, she had been identified as having relevant knowledge in the plaintiff's deposition. Thus, the opposing party was not prejudiced by late formal disclosure. Those facts certainly do not appear here as to Dr. Kelley or Dr. Cripton.

Respectfully submitted this 4th   day of March, 2010

/s Jeffrey S. Warncke
Jeffrey S. Warncke, Esq.
Georgia State Bar No. 737850
Attorney for Plaintiff

One Securities Centre, Suite 1200
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
(404) 841-9400
jswarncke@desw.com

/s Jeffrey D. Diamond
Jeffrey D. Diamond, Esq.
Georgia State Bar No. 599994
Attorney for Plaintiff

Law Offices of Jeffrey D. Diamond
115 Perimeter Center Place
South Terraces, Suite 425
Atlanta, Georgia 30346
Co-counsel for Plaintiff Thomas A. Modi, M.D.
jdiamond@diamlaw.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1.D.**

COMES NOW counsel for Plaintiff , Thomas A. Modi, M.D.,  and hereby certifies that this brief has been prepared with one of the fonts and point selections approved by the court in LR 5.1B, namely Times New Roman 14 point**.**

This the 4th  day of March, 2010.

                                                  s/ *Jeffrey S. Warncke*
                                                JEFFREY S. WARNCKE
                                                Georgia Bar Number: 737850
                                                Co-counsel for Plaintiff

DIETRICK, EVANS, SCHOLZ & WILLIAMS
1200 ONE SECURITIES CENTRE
3490 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA  30305
(404) 841-9400;869-0238
jswarncke@desw.com

<u>**CERTIFICATE OF COMPLIANCE SERVICE**</u>

COMES NOW, Plaintiff Thomas A. Modi, M.D., and hereby electronically files the following pleadings: ***Plaintiff's* REPLY in Support of** *Motion to Exclude Defendant's Late Disclosed Experts*. The undersigned counsel for Plaintiff certifies that the above pleadings were electronically served on**:**

H. Sanders Carter, Esq.
Aaron E. Pohlman, Esq.
Smith, Moore, Leatherwood, LLP
2300 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, Georgia 30309
Attorney for Defendant Provident Life
Insurance Company

Jeffrey D. Diamond, Esq.
Law Offices of Jeffrey D. Diamond
115 Perimeter Center Place
South Terraces, Suite 425
Atlanta, Georgia 30346
Co-counsel for Plaintiff Thomas A. Modi, M.D.

This the 4th day of March, 2010.

s/ *Jeffrey S. Warncke*
JEFFREY S. WARNCKE
Georgia Bar Number: 737850
Co-counsel for Plaintiff

DIETRICK, EVANS, SCHOLZ & WILLIAMS
1200 ONE SECURITIES CENTRE
3490 PIEDMONT ROAD, N.E.
ATLANTA, GEORGIA  30305
(404) 841-9400;869-0238
jswarncke@desw.com